**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **STELLAR SEMICONDUCTOR TECHNOLOGIES, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC.,**<br><br>Defendants. | Civil Action No. 2:26-cv-673<br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Stellar Semiconductor Technologies, LLC ("Stellar") submits this Complaint for Patent Infringement against Defendants Samsung Electronics Co., Ltd. ("Samsung Korea") and Samsung Electronics America, Inc. ("SEA") (collectively, "Samsung" or "Defendants"), and respectfully submits the following:

1. This Complaint asserts infringement of six United States Patents: 9,219,140; 9,281,367; 9,589,966; 9,673,100; 9,899,267; and 12,087,666 (collectively, the "Asserted Patents").

2. Defendants have infringed and continue to infringe one or more claims of each of the Asserted Patents by making, using, selling, offering to sell, and/or importing into the United States semiconductor devices and products incorporating such devices, including products that are made, used, sold, offered for sale, and/or imported in the Eastern District of Texas and elsewhere in the United States.

## PARTIES

3. Plaintiff Stellar Semiconductor Technologies, LLC ("Stellar") is a limited liability

company organized and existing under the laws of the State of Delaware, and owns all right, title, and interest in and to each of the Asserted Patents, including the sole and exclusive right to bring suit for their infringement. Its principal place of business is 5830 Granite Parkway, Suite 100, Plano, Texas 75024.

4. Defendant Samsung Electronics Co., Ltd. ("Samsung Korea") is a corporation organized and existing under the laws of the Republic of Korea, with its principal place of business at 129, Samsung-ro, Yeongtong-gu, Suwon-si, Gyeonggi-do, 16677, Republic of Korea. Samsung Korea designs, manufactures, and/or directs the manufacture of semiconductor devices and chipsets that are incorporated into consumer products sold in the United States, including in Texas and this District.

5. Defendant Samsung Electronics America, Inc. ("SEA") is a corporation organized under the laws of the State of New York, with its principal place of business at 700 Sylvan Avenue, Englewood Cliffs, New Jersey 07632. SEA is a wholly owned subsidiary of Samsung Korea. SEA designs, manufactures, and/or directs the manufacture of semiconductor devices and chipsets that are incorporated into consumer products sold in the United States, including in Texas and this District. SEA may be served through its registered agent in Texas.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*

7. Defendant Samsung Korea maintains substantial operations and a regular and established place of business in this District through, among other things, SEA's regional headquarters at 6625 Excellence Way, Plano, Texas 75023, and the Samsung Research America facility at 6105 Tennyson Pkwy, Plano, Texas 75024. Samsung Korea has committed acts of infringement in this District by making, selling, offering for sale, using, and importing the Accused

Products in this District. Samsung Korea directly or indirectly distributes and sells the Accused Products through retail and online channels throughout this District. Samsung Korea's Accused Products are sold at major retailers throughout this District.

8. Samsung Korea's subsidiaries and agents in Texas include at least Samsung Austin Semiconductor, LLC ("SAS"), which is a wholly owned subsidiary of Samsung Korea that operates a semiconductor fabrication facility at 12100 Samsung Blvd., Austin, Texas 78754. SAS has operated continuously in Texas since 1996, producing advanced logic semiconductor devices. Samsung Korea has invested more than $18 billion in SAS's Austin facility since its founding. In November 2021, Samsung Korea announced an additional minimum investment of $17 billion to construct a new advanced semiconductor manufacturing facility in Taylor, Texas, approximately 30 miles from the Austin fab. The Taylor fab broke ground in 2022. In 2024, the U.S. Department of Commerce awarded Samsung up to $4.745 billion in direct funding under the CHIPS and Science Act for Samsung's Texas operations, including two new leading-edge logic fabs and research and development in Taylor, as well as an expansion to the existing Austin facility. Samsung is expected to invest more than $37 billion in the Texas region in the coming years, and the proposed investment would support the creation of over 15,000 jobs. In September 2025, Samsung received a $250 million grant from the Texas Semiconductor Innovation Fund for the Taylor facility, linked to over $4.73 billion in additional capital investment.

9. Defendant SEA maintains substantial operations in Texas, including its North Texas campus at 6625 Excellence Way, Plano, Texas 75023, where it employs over 1,000 personnel across multiple divisions, including Customer Care, Mobile, Mobile R&D, and Engineering. Moreover, on June 1, 2026, Samsung publicly announced that SEA is relocating its United States headquarters from Englewood Cliffs, New Jersey to its existing campus in Plano, Texas, with the transition of its headquarters to this District to be completed by the end of 2026. *Samsung Electronics to move US*

*headquarters from New Jersey to Texas*, THE KOREA TIMES (June 1, 2026), https://www.koreatimes.co.kr/business/companies/20260601/samsung-electronics-to-move-us-headquarters-from-new-jersey-to-texas (last accessed on August 7, 2026); *Samsung moving U.S. headquarters to Plano*, NBC 5 DALLAS-FORT WORTH (June 3, 2026), https://www.nbcdfw.com/news/local/samsung-moving-u-s-headquarters-to-plano/4031494/ (last accessed on August 7, 2026).

10. On information and belief, Defendants conduct substantial business in this forum, including (a) engaging in the infringing conduct alleged herein in Texas and in this judicial District; (b) regularly and consistently doing and soliciting business; (c) engaging in other persistent courses of conduct such as providing customer service and warranty repairs in connection with their business operations in Texas and in this judicial District; (d) deriving substantial revenue by their offering of infringing products and providing infringing goods to consumers in Texas and in this District; and (e) purposefully establishing substantial, systematic, and continuous contacts with the state of Texas and with this District such that they should reasonably expect to be subject to suit here in this District.

11. Each Defendant is subject to this Court's specific personal jurisdiction pursuant to due process and the Texas Long Arm Statute because each Defendant directly, and/or through subsidiaries, affiliates, and agents, makes, imports, ships, distributes, offers for sale, sells, uses, and advertises (including offering products and services through their respective websites and marketing channels) infringing semiconductor products and consumer devices in the United States, Texas, and this District.

12. Each Defendant is further subject to this Court's specific personal jurisdiction because each Defendant directly, and/or through subsidiaries and agents, has induced others,

including at least its distributors, resellers, retailers, carriers, end-users, and customers, to commit acts of infringement in the United States, Texas, and this District.

13. Each Defendant is further subject to this Court's specific personal jurisdiction because each Defendant directly, and/or through subsidiaries and agents, has contributed to others, including at least its distributors, resellers, retailers, carriers, end-users, and customers, committing acts of infringement in the United States, Texas, and this District.

14. Defendants have purposefully and voluntarily placed infringing semiconductor products and consumer devices in the stream of commerce while knowing, expecting, and intending them to be sold in and purchased and used by consumers in the United States, Texas, and this District. By placing Accused Products and Accused Processors into the stream of commerce with knowledge that they would be sold throughout the United States, including Texas, Defendants have purposefully availed themselves of the privilege of conducting business in this forum.

15. Venue is proper in this District for Samsung Korea because, *inter alia*, under 28 U.S.C. §§ 1391(c)(3) and 1400(b), Samsung Korea is a foreign corporation that may be sued in any judicial district, and because Samsung Korea has committed acts of infringement in this District and has caused infringing products to be sold and used in this District.

16. Venue is proper in this District for SEA under 28 U.S.C. § 1400(b) because (a) SEA has committed acts of infringement in this District, including making, using, selling, offering to sell, and/or importing the Accused Products, and (b) SEA has a regular and established place of business in this District, including at least its regional headquarters and Samsung Research America facility in Plano, Texas. Moreover, as discussed above, on June 1, 2026, Samsung publicly announced that SEA is relocating its United States headquarters from Englewood Cliffs, New Jersey to its existing campus in Plano, Texas, with the transition of its headquarters to this District to be completed by the end of 2026.

17. Moreover, Defendants have not disputed this Court's personal jurisdiction over them in other recent patent-infringement actions. *See, e.g.*, Defendants' Answer, Affirmative Defenses, and Counterclaims, ¶9, *Four Batons Wireless, LLC v. Samsung Elecs. Co., Ltd.*, Case No. 2:24-cv-284 (E.D. Tex. Aug. 19, 2024), ECF No. 24.

18. Defendants also have not contested that venue properly lies in this District in other recent patent-infringement actions against them. *See, e.g.*, *id.* at ¶ 15.

## THE ASSERTED PATENTS

### I. U.S. Patent No. 9,219,140

19. U.S. Patent No. 9,219,140 (the "'140 patent") is titled "Metal Oxide Semiconductor Transistor and Manufacturing Method Thereof," and was duly and legally issued by the United States Patent and Trademark Office ("USPTO") on December 22, 2015. Stellar holds by assignment all rights and title to the '140 patent, including the sole and exclusive right to bring a claim for its infringement. A true and correct copy of the '140 patent is attached hereto as Exhibit 1.

20. The '140 patent generally claims a MOS transistor and manufacturing method thereof comprising a substrate, a gate dielectric layer disposed on the substrate, a gate disposed on the gate dielectric layer, a source/drain region disposed in the substrate at two sides of the gate, and a silicide layer disposed on a part of the source/drain region. The silicide layer comprises a curved bottom surface and a curved top surface, wherein both surfaces bend toward the substrate and the curved top surface is sunken from two sides thereof. Two ends of the silicide layer form pointed tips raised up over the source/drain region, with the silicide layer in the middle being thicker than the silicide layer in the peripheral, thereby forming a crescent structure.

21. To the extent applicable, Plaintiff has complied with 35 U.S.C. § 287(a) with respect to the '140 patent. Defendants are not licensed to practice the '140 patent in either an express or implied manner, nor do they enjoy or benefit from any rights in or to the '140 patent whatsoever.

**II. U.S. Patent No. 9,281,367**

22. U.S. Patent No. 9,281,367 (the "'367 patent") is titled "Semiconductor Structure Having Contact Plug and Method of Making the Same," and was duly and legally issued by the USPTO on March 8, 2016. Stellar holds by assignment all rights and title to the '367 patent, including the sole and exclusive right to bring a claim for its infringement. A true and correct copy of the '367 patent is attached hereto as Exhibit 2.

23. The '367 patent generally claims a semiconductor structure and manufacturing method thereof comprising a substrate, a transistor disposed on the substrate having a gate and a source/drain region, a first interlayer dielectric (ILD) layer disposed on the transistor, a first contact plug disposed in the first ILD layer wherein a top surface of the first contact plug is higher than a top surface of the gate, a second ILD layer disposed on the first ILD layer, a second contact plug disposed in the second ILD layer and electrically connected to the first contact plug, and a third contact plug disposed in both the first ILD layer and the second ILD layer and electrically connected to the gate.

24. To the extent applicable, Plaintiff has complied with 35 U.S.C. § 287(a) with respect to the '367 patent. Defendants are not licensed to practice the '367 patent in either an express or implied manner, nor do they enjoy or benefit from any rights in or to the '367 patent whatsoever.

**III. U.S. Patent No. 9,589,966**

25. U.S. Patent No. 9,589,966 (the "'966 patent") is titled "Static Random Access Memory" and was duly and legally issued by the USPTO on March 7, 2017. Stellar holds by assignment all rights and title to the '966 patent, including the sole and exclusive right to bring a claim for its infringement. A true and correct copy of the '966 patent is attached hereto as Exhibit 3.

26. The ’966 patent generally claims a static random access memory (SRAM) comprising a plurality of SRAM cells on a substrate, wherein each SRAM cell comprises a gate structure on the substrate, a first interlayer dielectric (ILD) layer around the gate structure, a first contact plug in the first ILD layer, a second ILD layer on the first ILD layer, and a second contact plug in the second ILD layer electrically connected to the first contact plug.

27. To the extent applicable, Plaintiff has complied with 35 U.S.C. § 287(a) with respect to the ’966 patent. Defendants are not licensed to practice the ’966 patent in either an express or implied manner, nor do they enjoy or benefit from any rights in or to the ’966 patent whatsoever.

**IV. U.S. Patent No. 9,673,100**

28. U.S. Patent No. 9,673,100 (the “’100 patent”) is titled “Semiconductor Device Having Contact Plug in Two Dielectric Layers and Two Etch Stop Layers,” and was duly and legally issued by the USPTO on June 6, 2017. Stellar holds by assignment all rights and title to the ’100 patent, including the sole and exclusive right to bring a claim for its infringement. A true and correct copy of the ’100 patent is attached hereto as Exhibit 4.

29. The ’100 patent generally claims a semiconductor device comprising a substrate, a plurality of gate structures on the substrate, an interlayer dielectric (ILD) layer around the gate structures, a first etch stop layer on the ILD layer and the gate structures, a first dielectric layer on the first etch stop layer, a second etch stop layer on the first dielectric layer, a second dielectric layer on the second etch stop layer, a plurality of first contact plugs in the ILD layer, the first etch stop layer, and the first dielectric layer for electrically connecting to a source/drain region in the substrate, a plurality of second contact plugs in the second etch stop layer and the second dielectric layer for electrically connecting to the first contact plugs, and a plurality of third contact plugs in the first etch stop layer, the first dielectric layer, the second etch stop layer, and the second dielectric layer for electrically connecting to the gate structures. The patent claims that the third contact plugs

contact the gate structures and the first contact plugs, and the bottom surface of the second contact plugs is greater than a top surface of the first contact plugs.

30. To the extent applicable, Plaintiff has complied with 35 U.S.C. § 287(a) with respect to the ’100 patent. Defendants are not licensed to practice the ’100 patent in either an express or implied manner, nor do they enjoy or benefit from any rights in or to the ’100 patent whatsoever.

**V. U.S. Patent No. 9,899,267**

31. U.S. Patent No. 9,899,267 (the "’267 patent") is titled "Semiconductor Device and Manufacturing Method Thereof," and was duly and legally issued by the USPTO on February 20, 2018. Stellar holds by assignment all rights and title to the ’267 patent, including the sole and exclusive right to bring a claim for its infringement. A true and correct copy of the ’267 patent is attached hereto as Exhibit 5.

32. The ’267 patent generally claims a semiconductor device and manufacturing method thereof comprising a semiconductor substrate including a plurality of fin structures elongated in a first direction, a shallow trench isolation (STI) structure disposed on the semiconductor substrate and disposed between the fin structures, a plurality of gate electrodes disposed on the semiconductor substrate and the STI structure wherein each gate electrode is elongated in a second direction and disposed straddling at least one of the fin structures, and a gate isolation structure disposed between two adjacent gate electrodes in the second direction. The patent specifically claims that the bottom surface of the gate isolation structure is lower than a top surface of the shallow trench isolation structure, and the gate isolation structure comprises a first section and a second section disposed under the first section, wherein the second section is lower than the top surface of the STI structure. In certain embodiments, the gate isolation structure further comprises a third section disposed under the second section, wherein the third section is lower than a bottom surface of the shallow trench

isolation structure. The gate isolation structure cuts at least one gate structure into two gate electrodes.

33. To the extent applicable, Plaintiff has complied with 35 U.S.C. § 287(a) with respect to the ’267 patent. Defendants are not licensed to practice the ’267 patent in either an express or implied manner, nor do they enjoy or benefit from any rights in or to the ’267 patent whatsoever.

**VI. U.S. Patent No. 12,087,666**

34. U.S. Patent No. 12,087,666 (the “’666 patent”) is titled “Semiconductor Device,” and was duly and legally issued by the USPTO on September 10, 2024. Stellar holds by assignment all rights and title to the ’666 patent, including the sole and exclusive right to bring a claim for its infringement. A true and correct copy of the ’666 patent is attached hereto as Exhibit 6.

35. The ’666 patent generally claims a semiconductor device comprising a substrate including a first active region and a second active region elongated in a first direction, an isolation structure disposed between the active regions, a first gate structure and a second gate structure continuously elongated in a second direction and disposed on the first active region, the second active region, and the isolation structure, a first source/drain region disposed in the first active region located between the first and second gate structures, and a first slot contact structure continuously elongated in the second direction and disposed between the first and second gate structures, wherein the first slot contact structure is disposed on the first active region, the second active region, and the isolation structure and is electrically connected with the first source/drain region. The patent further claims a second slot contact structure that is electrically connected with a second source/drain region located on the opposite side of the first gate structure, wherein a length of the second slot contact structure is less than the length of the first slot contact structure and a part of the second slot contact structure is disposed above the isolation structure. The patent additionally claims embodiments including a first gate contact structure and a second gate contact structure disposed on, and

electrically connected with, the first and second gate structures respectively, wherein the first and second gate contact structures are disposed at two opposite sides of the first slot contact structure, are disposed above the isolation structure, do not overlap the active regions in the thickness direction of the substrate, and have a length less than the length of the isolation structure.

36. To the extent applicable, Plaintiff has complied with 35 U.S.C. § 287(a) with respect to the ’666 patent. Defendants are not licensed to practice the ’666 patent in either an express or implied manner, nor do they enjoy or benefit from any rights in or to the ’666 patent whatsoever.

## DEFENDANTS’ USE OF STELLAR’S PATENTED TECHNOLOGY

### I. Foundry and Process Node Operations for the Accused Products

37. Samsung Korea operates Samsung Foundry, one of the world’s leading semiconductor fabrication businesses, alongside its System LSI Division which designs the Exynos line of application processors. Samsung Foundry fabricates both its own Exynos processors and third-party chipsets—such as the Qualcomm Snapdragon 888 and Snapdragon 8 Gen 1—at its manufacturing facilities in Hwaseong and Pyeongtaek, South Korea, and at Samsung Austin Semiconductor in Austin, Texas. Each generation of Samsung Foundry’s process nodes, including the 5LPP (5nm), 5LPE (5nm EUV), and 4LPE (4nm) nodes, uses FinFET transistor architectures, silicide contact schemes, interlayer dielectric (ILD) stack configurations, and SRAM cell layouts that implement the inventions claimed in the Asserted Patents.

38. Samsung’s 5nm Low Power Plus (“5LPP”) process node is an advanced FinFET node used to fabricate the Qualcomm Snapdragon 888 application processor. As confirmed by structural analysis, the 5LPP process employs FinFET transistors with silicide source/drain contacts and SRAM bitcell layouts that practice one or more claims of the Asserted Patents (namely, the ’140 and ’966 patents). Samsung incorporates the Snapdragon 888 into the Accused Products identified

in Exhibit 7, including the Galaxy S21, S21+, S21 Ultra, and S21 FE and the Galaxy Z Fold 3 and Z Flip 3.

39. Samsung's 5nm ("5LPE") process node, which uses extreme ultraviolet lithography, was used to fabricate the Exynos 1280 and Exynos 1380 application processors. The 5LPE process uses FinFET transistors with integrated silicide layers and SRAM cell configurations that practice one or more claims of the Asserted Patents. On information and belief, because infringement occurs as a result of Samsung Foundry's manufacturing processes at the 5LPE node, all semiconductor devices manufactured at the 5LPE node using common FinFET transistor structures infringe at least the same claims of the Asserted Patents (namely, the '140 and '966 patents). Samsung incorporates the Exynos 1280 and 1380 into the Accused Products identified in Exhibit 7, including the Galaxy A53 5G, A33, M33, M34, A54 5G, and A25 5G and the Galaxy Tab S6 Lite (2024).

40. Samsung's 4nm Low Power Early ("4LPE") process node is a FinFET-based node used to fabricate the Qualcomm Snapdragon 8 Gen 1. As confirmed by structural analysis, the 4LPE process employs common FinFET transistor architectures, crescent-shaped silicide contacts, and SRAM cell contact topologies that practice one or more claims of the Asserted Patents (namely, the '140 and '966 patents). Samsung incorporates the Snapdragon 8 Gen 1 into the Accused Products identified in Exhibit 7, including the Galaxy S22, S22+, and S22 Ultra and the Galaxy S23 FE and the Galaxy Tab S8, Tab S8+, and Tab S8 Ultra.

41. Taiwan Semiconductor Manufacturing Company ("TSMC") manufactures Qualcomm's premium Snapdragon application processors at its fabs in Hsinchu, Tainan, and Taichung, Taiwan. These fabricated processors are then shipped to Samsung and other original equipment manufacturers ("OEMs") for incorporation into consumer devices, including the Samsung Galaxy smartphones and tablets identified herein as Accused Products.

42. TSMC's N7 (7nm) process node employs FinFET transistors and deep ultraviolet (DUV) multi-patterning lithography, with a fin pitch of approximately 27nm and a minimum metal pitch of approximately 36nm. TSMC's N7 process was used to fabricate the Qualcomm Snapdragon 855 and 855+ application processors. As confirmed by structural analysis of Snapdragon 855-based devices, TSMC's N7 process employs crescent-shaped silicide contact structures and SRAM cell contact topologies that practice one or more claims of the Asserted Patents (namely, the '140 and '966 patents). Samsung incorporates the Snapdragon 855 and 855+ into the Accused Products identified in Exhibit 7, including the Galaxy S10e, S10, S10+, S10 5G, and S10 Lite; the Galaxy Note 10, Note 10+, and Note 10+ 5G; the Galaxy Tab S6 and Tab S6 5G; and the Galaxy A90 5G.

43. TSMC's N7P (7nm) process node is an enhanced variant of the N7 process offering approximately 7% higher performance or 10% lower power consumption at the same frequency compared to N7, while utilizing DUV lithography. The N7P process was used to fabricate the Qualcomm Snapdragon 865 and 865+ application processors. The N7P process employs the same fundamental FinFET transistor, silicide, and SRAM cell structures as the N7 process, and those structures practice one or more claims of the Asserted Patents (namely, the '140 and '966 patents). Samsung incorporates the Snapdragon 865 and 865+ into the Accused Products identified in Exhibit 7, including the Galaxy S20, S20+, S20 Ultra, and S20 FE 5G; the Galaxy Note 20, Note 20 Ultra, and Note 20 Ultra 5G; and the Galaxy Tab S7 and Tab S7+.

44. TSMC's N4 (4nm) process node is a FinFET-based advanced node derived from TSMC's 5nm family. The N4 process was used to fabricate the Qualcomm Snapdragon 8+ Gen 1. TSMC's N4 process employs advanced FinFET transistor architectures with crescent-shaped silicide contact structures, multi-layer contact stacks, butted contact structures, three-section gate-isolation structures, slot-contact and gate-contact layout configurations, and SRAM cell contact topologies that practice one or more claims of all six Asserted Patents. Samsung incorporates the

Snapdragon 8+ Gen 1 into the Accused Products identified in Exhibit 7, namely the Galaxy Z Fold 4 and Z Flip 4.

45. TSMC's N4P (4nm) process node is an enhanced performance variant of the N4 process, incorporating additional optimizations for power, performance, and area. The N4P process was used to fabricate the Qualcomm Snapdragon 8 Gen 2 and Snapdragon 8 Gen 3. TSMC's N4P process employs advanced FinFET transistor architectures with crescent-shaped silicide contacts, multi-layer contact stacks, butted contact structures, three-section gate-isolation structures, slot-contact and gate-contact layout configurations, and SRAM cell contact topologies that practice one or more claims of all six Asserted Patents. Samsung incorporates the Snapdragon 8 Gen 2 and 8 Gen 3 into the Accused Products identified in Exhibit 7, including the Galaxy S23, S23+, and S23 Ultra; the Galaxy Z Fold 5 and Z Flip 5; the Galaxy Tab S9, Tab S9+, and Tab S9 Ultra; the Galaxy S24, S24+, and S24 Ultra; the Galaxy Xcover 7 Pro 5G; and the Galaxy Z Fold 6 and Z Flip 6.

46. TSMC's N3E (3nm enhanced) process node is TSMC's first production-volume 3nm-class process technology, employing FinFET transistors at the 3nm generation with increased transistor density and improved power efficiency relative to 4nm nodes. The N3E process was used to fabricate the Qualcomm Snapdragon 8 Elite (also known as the Snapdragon 8 Gen 4) application processor. Based on structural analysis of Snapdragon 8 Elite devices, TSMC's N3E process employs advanced FinFET transistor architectures, crescent-shaped silicide contacts, multi-layer contact-plug architectures, three-section gate-isolation structures, slot-contact and gate-contact layouts, and SRAM cell contact topologies that practice one or more claims of the Asserted Patents (namely, the '140, '367, '966, '267, and '666 patents). Samsung incorporates the Snapdragon 8 Elite into the Accused Products identified in Exhibit 7, including the Galaxy S25, S25+, S25 Ultra, and S25 Edge and the Galaxy Z Fold 7 and Z Trifold.

47. TSMC's N3P (3nm) process node is an enhanced variant of the N3E node with further improvements in power efficiency, transistor density, and performance. The N3P process is used to fabricate the Qualcomm Snapdragon 8 Elite Gen 5 (also referred to as the Snapdragon 8 Gen 5), which powers the Samsung Galaxy S26 series. On information and belief, and based on TSMC's public statements regarding N3P's architectural continuity with N3E, TSMC's N3P process employs the same fundamental FinFET transistor architectures, crescent-shaped silicide contacts, multi-layer contact stacks, three-section gate-isolation structures, slot-contact and gate-contact layouts, and SRAM cell contact topologies that practice one or more claims of the Asserted Patents (namely, the '140, '367, '966, '267, and '666 patents). Samsung incorporates the Snapdragon 8 Elite Gen 5 into the Accused Products identified in Exhibit 7, including the Galaxy S26, S26+, and S26 Ultra.

## II. Accused Processors and Accused Products

48. Samsung makes, uses, imports into the United States, offers for sale, sells, and/or causes to be sold within the United States, including in Texas and this District, consumer products incorporating Qualcomm Snapdragon and Samsung Exynos processors that embody the inventions claimed in the Asserted Patents. The Snapdragon processors, other than the Snapdragon 888 and 8 Gen 1, are manufactured at TSMC at the process nodes identified below and are then incorporated by Samsung into the Accused Products. The Snapdragon 888 and 8 Gen 1, and the Exynos 1280 and 1380, are fabricated at Samsung's own foundry.

49. The Accused Processors include, without limitation, the following application processors, each manufactured at the indicated foundry and process node.

50. The Accused Products are Samsung-branded consumer devices—including smartphones and tablets—that incorporate one or more of the Accused Processors. Exhibit 7 to this Complaint and the chart below identify each Accused Product, its processor, and the specific

Asserted Patents that product is accused of infringing. For ease of reference, the chart below groups the Accused Products by the particular process node in which the Accused Processors are manufactured. Exhibit 7 is incorporated by reference herein and is summarized here:

| Foundry/Node | Accused Products | Accused Processor(s) | Infringed Patents |
|---|---|---|---|
| TSMC N7 / N7P (7nm) | Galaxy S10e, S10, S10+, S10 5G, S10 Lite; Galaxy Note 10, Note 10+, Note 10+ 5G; Galaxy Tab S6, Tab S6 5G; Galaxy A90 5G; Galaxy S20, S20+, S20 Ultra, S20 FE 5G; Galaxy Note 20, Note 20 Ultra, Note 20 Ultra 5G; Galaxy Tab S7, Tab S7+ | Snapdragon 855, 855+, 865, 865+ | ’140, ’966 |
| Samsung 5LPP (5nm) | Galaxy S21, S21+, S21 Ultra, S21 FE; Galaxy Z Fold 3, Z Flip 3 | Snapdragon 888 | ’140, ’966 |
| Samsung 5LPE (5nm) | Galaxy A53 5G, A33, M33, M34, A54 5G, A25 5G; Galaxy Tab S6 Lite (2024) | Exynos 1280, 1380 | ’140, ’966 |
| Samsung 4LPE (4nm) | Galaxy S22, S22+, S22 Ultra; Galaxy S23 FE; Galaxy Tab S8, Tab S8+, Tab S8 Ultra | Snapdragon 8 Gen 1 | ’140, ’966 |
| TSMC N4 (4nm) | Galaxy Z Fold 4, Z Flip 4 | Snapdragon 8+ Gen 1 | ’140, ’367, ’966, ’100, ’267, ’666 |
| TSMC N4P (4nm) | Galaxy S23, S23+, S23 Ultra; Galaxy Z Fold 5, Z Flip 5; Galaxy Tab S9, Tab S9+, Tab S9 Ultra; Galaxy S24, S24+, S24 Ultra; Galaxy Xcover 7 Pro 5G; Galaxy Z Fold 6, Z Flip 6 | Snapdragon 8 Gen 2, 8 Gen 3 | ’140, ’367, ’966, ’100, ’267, ’666 |
| TSMC N3E / N3P (3nm) | Galaxy S25, S25+, S25 Ultra, S25 Edge; Galaxy Z Fold 7, Z Trifold; Galaxy S26, S26+, S26 Ultra | Snapdragon 8 Elite (Gen 4), 8 Elite (Gen 5) | ’140, ’367, ’966, ’267, ’666 |

51. Stellar’s pre-suit investigation is based on publicly available technical information, structural reverse-engineering analyses using optical microscopy, scanning electron microscopy (SEM), transmission electron microscopy (TEM), energy-dispersive spectroscopy (EDS), scanning transmission electron microscopy (STEM), and electron energy loss spectroscopy (EELS), and comparisons to the structures disclosed in Samsung’s technical publications.

52. Infringement of the Asserted Patents arises from the transistor structures, contact architectures, and SRAM configurations that are characteristic of each foundry’s process node. All Accused Processors fabricated at a given process node, and all Accused Products incorporating those

processors, infringe in the same manner, as set out in the groupings in Exhibit 7. For each Asserted Patent, the Counts below set forth one representative as an example. Every other Accused Product identified in Exhibit 7 infringes that patent in the same or a substantially similar manner. The specific patents infringed by each Accused Product are identified in Exhibit 7.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 9,219,140

53. Stellar repeats and incorporates by reference each preceding paragraph as if fully set forth herein.

54. Samsung has directly infringed and continues to directly infringe one or more claims of the ’140 patent, in violation of 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, using, selling, offering to sell, and/or importing into the United States the Accused Processors and Accused Products, and other products made by practicing and by performing processes that result in practicing the ’140 patent as described herein. The Accused Processors and Accused Products identified in the representative reads below infringe at least the representative claims of the ’140 patent.

55. The ’140 patent generally claims a MOS transistor having a crescent-shaped silicide layer formed on a source/drain region in cross-section, wherein the silicide layer increases contact area to an overlying contact plug and reduces contact-resistance relative to conventional planar silicide structures. The specific process nodes manufacture transistors bearing these structural elements.

56. The Accused Products infringing the ’140 patent include all products identified in Exhibit 7 as infringing this patent. These include, without limitation, products incorporating: (i) TSMC N7- and N7P-fabricated Snapdragon 855, 855+, 865, and 865+; (ii) Samsung 5LPP-fabricated Snapdragon 888; (iii) Samsung 5LPE-fabricated Exynos 1280 and 1380; (iv) Samsung 4LPE-fabricated Snapdragon 8 Gen 1; (v) TSMC N4-fabricated Snapdragon 8+ Gen 1; (vi) TSMC

N4P-fabricated Snapdragon 8 Gen 2 and 8 Gen 3; and (vii) TSMC N3E- and N3P-fabricated Snapdragon 8 Elite (Gen 4) and Snapdragon 8 Elite (Gen 5). Each of these process nodes employs FinFET transistors with crescent-shaped silicide source/drain contacts that practice the ’140 patent. The Qualcomm Snapdragon 8+ Gen 1 is detailed below as a representative example.

57. As a representative example, the Qualcomm Snapdragon 8+ Gen 1, a 4nm (N4) application processor incorporated into Samsung Galaxy devices, including the Galaxy Z Fold 4, embodies each element of at least claim 1 of the ’140 patent. The Snapdragon 8+ Gen 1 is a FinFET device formed on a silicon substrate (the claimed “substrate”), with a gate dielectric layer on the substrate (the claimed “gate dielectric layer”) and an overlying metal gate comprising work-function and fill metals (the claimed “gate”), and epitaxial source/drain regions formed in the substrate on two sides of each gate (the claimed “source/drain region”). A silicide layer is on a portion of each source/drain region beneath the source/drain contact.

58. As illustrated in the annotated transmission electron microscope (TEM) cross-section below, the silicide layer has both a curved bottom surface and a curved top surface that bend toward the substrate, with the top surface sunken between two raised, pointed end tips, and with the silicide thicker in the middle than at its periphery, forming the “crescent” structure recited in claim 1.

59. The annotated TEM cross-section of the Snapdragon 8+ Gen 1 below depicts this crescent silicide structure, including the limitation of claim 1 reciting “a silicide layer disposed on a part of the source/drain region, wherein the silicide layer comprises a curved bottom surface and a curved top surface, wherein both the curved top surface and the curved bottom surface of the silicide layer bends toward the substrate and the curved top surface is sunken from two sides thereof … and the silicide layer in the middle is thicker than the silicide layer in the peripheral, thereby forming a crescent structure”:




60. The Snapdragon 8+ Gen 1 also practices the dependent claims of the ’140 patent, including at least claims 3, 4, and 7.

61. Claim 3 of the ’140 patent provides: “The MOS transistor as in claim 1, wherein the top surface of the silicide layer is substantially lower than a top surface of the gate.” As shown in the annotated cross-section image below, the top surface of the silicide layer lies substantially below the top surface of the gate:



62. Claim 4 of the ’140 patent provides: “The MOS transistor as in claim 1, wherein the silicide layer comprises NiSi, CoSi or TiSi.” In the Snapdragon 8+ Gen 1, the silicide layer comprises TiSi.

63. Claim 7 of the ’140 patent provides: “The MOS transistor as in claim 1, wherein the source/drain region comprises an epitaxial layer.” In the Snapdragon 8+ Gen 1, the source/drain region is an epitaxial layer.

64. Since having notice of the ’140 patent, through its actions, Samsung has induced infringement of the ’140 patent under 35 U.S.C. § 271(b) by actively inducing its customers, distributors, retailers, resellers, product makers, partners, agents, affiliates, service providers, importers, and/or end-users to directly infringe the ’140 patent. Samsung has done so by, among other things, creating, disseminating, designing, marketing, advertising, promoting, instructing, encouraging, and providing technical support and documentation for the Accused Processors and Accused Products, with knowledge of the ’140 patent and with the specific intent that customers, end-users, and supply chain participants will make, use, offer to sell, sell, and import the Accused Processors and Accused Products in a manner that infringes the ’140 patent. Samsung’s sales engineers, field application engineers, and technical marketing personnel interface with customers and distribution partners—including Samsung’s own device-manufacturing divisions and Samsung’s retail distribution partners—to obtain orders and to promote the use of the Accused Processors and Accused Products. These efforts have directly and intentionally resulted in acts of direct infringement by those third parties.

65. Since having notice of the ’140 patent, Samsung has contributorily infringed and continues to contributorily infringe one or more claims of the ’140 patent under 35 U.S.C. § 271(c) by importing, offering to sell and selling within the United States Accused Processors and components thereof that are especially made or especially adapted for use in infringing the ’140

patent and that are not staple articles or commodities of commerce suitable for substantial non-infringing use. The Accused Processors are specialized integrated circuits that can only function when incorporated into consumer electronic products and that have no use outside their intended applications. Samsung has known the Accused Processors to be especially adapted for practicing, and thus infringing, the ’140 patent at least as of the filing of this Complaint.

66. At least as of the filing and service of this Complaint, Samsung has had knowledge of the ’140 patent and of its infringement. Despite this knowledge, Defendants have continued their infringing acts.

67. Samsung’s direct, induced, and contributory infringement of the ’140 patent has caused, and will continue to cause, substantial damage to Stellar. Therefore, Stellar is entitled to an award of damages adequate to compensate for Defendants’ infringement, but in no event less than a reasonable royalty, together with pre- and post-judgment interest, attorneys’ fees, and costs, as fixed by the Court under 35 U.S.C. §§ 284 and 285.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 9,281,367

68. Stellar repeats and incorporates by reference each preceding paragraph as if fully set forth herein.

69. Samsung has directly infringed and continues to directly infringe one or more claims of the ’367 patent, in violation of 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, using, selling, offering to sell, and/or importing into the United States the Accused Processors and Accused Products, and other products made by practicing and by performing processes that result in practicing the ’367 patent as described herein. The Accused Processors and Accused Products identified in the representative reads below infringe at least the representative claims of the ’367 patent.

70. The ’367 patent generally claims a semiconductor device in which multi-layer interlayer dielectric (ILD) structures are used to form contact-plug architectures that connect transistor source/drain regions, gate electrodes, and interconnect layers in advanced FinFET processes.

71. The Accused Products infringing the ’367 patent include all products identified in Exhibit 7 as infringing this patent. These include, without limitation, all Accused Products incorporating the following processors: (i) TSMC N4-fabricated Snapdragon 8+ Gen 1; (ii) TSMC N4P-fabricated Snapdragon 8 Gen 2 and 8 Gen 3; and (iii) TSMC N3E- and N3P-fabricated Snapdragon 8 Elite (Gen 4) and Snapdragon 8 Elite (Gen 5). The Qualcomm Snapdragon 8+ Gen 1 is detailed below as a representative example.

72. As a representative example, the Qualcomm Snapdragon 8+ Gen 1, a 4nm (N4) application processor incorporated into Samsung Galaxy devices, including the Galaxy Z Fold 4, embodies each element of at least claim 1 of the ’367 patent. The processor includes a silicon substrate bearing FinFET transistors, each having a gate and adjacent source/drain regions (the claimed “transistor”). A first interlayer dielectric (“ILD”) layer is comprised of silicon oxide and is disposed on the transistor with its bottom surface level with the top surface of the gate. A first contact plug (“CT”) is disposed in the first ILD layer and electrically connects the source/drain region, and its top surface is higher than the top of the gate and level with the top of the first ILD layer. A second ILD layer of silicon oxide is disposed on the first ILD layer, and a second contact plug (“VCT”) is disposed in the second ILD layer and electrically connects to the first contact plug. A third contact plug (the fab’s tungsten “VCG”) is disposed in both the first and second ILD layers and electrically connects the gate.

73. The annotated TEM cross-section of the Snapdragon 8+ Gen 1 below identifies the first and second ILD layers and the first (CT), second (VCT), and third (VCG) contact plugs, which

satisfy the limitation of claim 1 reciting "a first contact plug disposed in the first ILD layer to electrically connect the source/drain region, wherein a top surface of the first contact plug is higher than a top surface of the gate … a second ILD layer disposed on the first ILD layer; a second contact plug disposed in the second ILD layer to electrically connect the first contact plug; and a third contact plug disposed in the first ILD layer and the second ILD layer to electrically connect the gate":




74. The Snapdragon 8+ Gen 1 also practices the dependent claims of the '367 patent: the first ILD layer over the gate is approximately 18 nm (180 Å) thick, which is greater than the 100-angstrom threshold of claims 2 and 3, and the first contact plug (CT) is cobalt while the second and third contact plugs (VCT, VCG) are tungsten. As shown in the annotated cross-section below, an etch-stop layer separates the first and second ILD layers, satisfying claim 10's requirement of "an etch stop layer disposed between the first ILD layer and the second ILD layer":






75. Since having notice of the ’367 patent, through its actions, Samsung has induced infringement of the ’367 patent under 35 U.S.C. § 271(b) by actively inducing its customers, distributors, retailers, resellers, product makers, partners, agents, affiliates, service providers, importers, and/or end-users to directly infringe the ’367 patent. Samsung has done so by, among other things, creating, disseminating, designing, marketing, advertising, promoting, instructing, encouraging, and providing technical support and documentation for the Accused Processors and Accused Products, with knowledge of the ’367 patent and with the specific intent that customers, end-users, and supply chain participants will make, use, offer to sell, sell, and import the Accused Processors and Accused Products in a manner that infringes the ’367 patent. Samsung’s sales engineers, field application engineers, and technical marketing personnel interface with customers and distribution partners—including Samsung’s own device-manufacturing divisions and Samsung’s retail distribution partners—to obtain orders and to promote the use of the Accused

Processors and Accused Products. These efforts have directly and intentionally resulted in acts of direct infringement by those third parties.

76. Since having notice of the ’367 patent, Samsung has contributorily infringed and continues to contributorily infringe one or more claims of the ’367 patent under 35 U.S.C. § 271(c) by importing, offering to sell and selling within the United States Accused Processors and components thereof that are especially made or especially adapted for use in infringing the ’367 patent and that are not staple articles or commodities of commerce suitable for substantial non-infringing use. The Accused Processors are specialized integrated circuits that can only function when incorporated into consumer electronic products and that have no use outside their intended applications. Samsung has known the Accused Processors to be especially adapted for practicing, and thus infringing, the ’367 patent at least as of the filing of this Complaint.

77. At least as of the filing and service of this Complaint, Samsung has had knowledge of the ’367 patent and of its infringement. Despite this knowledge, Defendants have continued their infringing acts.

78. Samsung’s direct, induced, and contributory infringement of the ’367 patent has caused, and will continue to cause, substantial damage to Stellar. Therefore, Stellar is entitled to an award of damages adequate to compensate for Defendants’ infringement, but in no event less than a reasonable royalty, together with pre- and post-judgment interest, attorneys’ fees, and costs, as fixed by the Court under 35 U.S.C. §§ 284 and 285.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 9,589,966

79. Stellar repeats and incorporates by reference each preceding paragraph as if fully set forth herein.

80. Samsung has directly infringed and continues to directly infringe one or more claims of the ’966 patent, in violation of 35 U.S.C. § 271(a), either literally or under the doctrine of

equivalents, by making, using, selling, offering to sell, and/or importing into the United States the Accused Processors and Accused Products, and other products made by practicing and by performing processes that result in practicing the ’966 patent as described herein. The Accused Processors and Accused Products identified in the representative reads below infringe at least the representative claims of the ’966 patent.

81. The ’966 patent generally claims a static random access memory (SRAM) comprising a plurality of SRAM cells on a substrate, wherein each SRAM cell comprises a gate structure on the substrate, a first interlayer dielectric (ILD) layer around the gate structure, a first contact plug in the first ILD layer, a second ILD layer on the first ILD layer, and a second contact plug in the second ILD layer electrically connected to the first contact plug.

82. The Accused Products infringing the ’966 patent include all products identified in Exhibit 7 as infringing this patent. The ’966 patent is asserted against the Accused Products incorporating the following Accused Processors: (i) TSMC N7- and N7P-fabricated Snapdragon 855, 855+, 865, and 865+ processors; (ii) Samsung 5LPP-fabricated Snapdragon 888 processors; (iii) Samsung 5LPE-fabricated Exynos 1280 and 1380 processors; (iv) Samsung 4LPE-fabricated Snapdragon 8 Gen 1 processors; (v) TSMC N4-fabricated Snapdragon 8+ Gen 1 processors; (vi) TSMC N4P-fabricated Snapdragon 8 Gen 2 and 8 Gen 3 processors; and (vii) TSMC N3E- and N3P-fabricated Snapdragon 8 Elite (Gen 4) and Snapdragon 8 Elite (Gen 5) processors. Each of these process nodes employs SRAM cell contact topologies using multi-layer contact plugs that practice the ’966 patent. The Qualcomm Snapdragon 8 Gen 1 is detailed below as a representative example.

83. As a representative example, the Qualcomm Snapdragon 8 Gen 1, a 4nm (N4) application processor incorporated into Samsung Galaxy devices including the Galaxy Z Fold 4, embodies each element of at least claim 1 of the ’966 patent. The processor includes a plurality of

six-transistor (6T) SRAM cells on a silicon substrate, each cell having two pull-up, two pull-down, and two pass-gate transistors. Within each cell, a metal gate structure sits on the substrate; a first ILD layer of silicon oxide surrounds the gate structure; a first contact plug (a cobalt "CT") is disposed in the first ILD layer; a second ILD layer of silicon oxide is disposed on the first ILD layer (separated by a stop layer); and a second contact plug (a tungsten "VCT") is disposed in the second ILD layer and electrically connected to the first contact plug.

84. The annotated TEM cross-section of the SRAM of the Snapdragon 8 Gen 1 below identifies the first and second ILD layers and the first (CT) and second (VCT) contact plugs—the limitation of claim 1 reciting "a first contact plug in the first ILD layer; a second ILD layer on the first ILD layer; and a second contact plug in the second ILD layer and electrically connected to the first contact plug":



85. The accused processor also practices the dependent claims of the ’966 patent: a silicon-nitride stop layer is disposed between the first and second ILD layers within each cell (claim 3). As shown in the annotated plan view below, the Snapdragon 8 Gen 1 contains a plurality of six-transistor SRAM cells arrayed on the substrate, each satisfying claim 2’s requirement that “each of the SRAM cells comprises two pull-up transistors, two pull-down transistors, and two access transistors”:




86. Since having notice of the ’966 patent, through its actions, Samsung has induced infringement of the ’966 patent under 35 U.S.C. § 271(b) by actively inducing its customers, distributors, retailers, resellers, product makers, partners, agents, affiliates, service providers, importers, and/or end-users to directly infringe the ’966 patent. Samsung has done so by, among other things, creating, disseminating, designing, marketing, advertising, promoting, instructing, encouraging, and providing technical support and documentation for the Accused Processors and Accused Products, with knowledge of the ’966 patent and with the specific intent that customers,

end-users, and supply chain participants will make, use, offer to sell, sell, and import the Accused Processors and Accused Products in a manner that infringes the ’966 patent. Samsung’s sales engineers, field application engineers, and technical marketing personnel interface with customers and distribution partners—including Samsung’s own device-manufacturing divisions and Samsung’s retail distribution partners—to obtain orders and to promote the use of the Accused Processors and Accused Products. These efforts have directly and intentionally resulted in acts of direct infringement by those third parties.

87. Since having notice of the ’966 patent, Samsung has contributorily infringed and continues to contributorily infringe one or more claims of the ’966 patent under 35 U.S.C. § 271(c) by importing, offering to sell and selling within the United States Accused Processors and components thereof that are especially made or especially adapted for use in infringing the ’966 patent and that are not staple articles or commodities of commerce suitable for substantial non-infringing use. The Accused Processors are specialized integrated circuits that can only function when incorporated into consumer electronic products and that have no use outside their intended applications. Samsung has known the Accused Processors to be especially adapted for practicing, and thus infringing, the ’966 patent at least as of the filing of this Complaint.

88. At least as of the filing and service of this Complaint, Samsung has had knowledge of the ’966 patent and of its infringement. Despite this knowledge, Defendants have continued their infringing acts.

89. Samsung’s direct, induced, and contributory infringement of the ’966 patent has caused, and will continue to cause, substantial damage to Stellar. Therefore, Stellar is entitled to an award of damages adequate to compensate for Defendants’ infringement, but in no event less than a reasonable royalty, together with pre- and post-judgment interest, attorneys’ fees, and costs, as fixed by the Court under 35 U.S.C. §§ 284 and 285.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 9,673,100

90. Stellar repeats and incorporates by reference each preceding paragraph as if fully set forth herein.

91. Samsung has directly infringed and continues to directly infringe one or more claims of the ’100 patent, in violation of 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, using, selling, offering to sell, and/or importing into the United States the Accused Processors and Accused Products, and other products made by practicing and by performing processes that result in practicing the ’100 patent as described herein. The Accused Processors and Accused Products identified in the representative reads below infringe at least the representative claims of the ’100 patent.

92. The ’100 patent generally claims a semiconductor device in which gate and contact integrations utilize butted contact structures formed using at least two etch-stop layers.

93. The Accused Products infringing the ’100 patent include all the Accused Products identified in Exhibit 7 as infringing this patent. These include, without limitation, the Accused Products incorporating: (i) TSMC N4-fabricated Snapdragon 8+ Gen 1 processors; and (ii) TSMC N4P-fabricated Snapdragon 8 Gen 2 and 8 Gen 3 processors. Each of these process nodes employs butted contact structures formed using a dual etch-stop and multi-layer dielectric integration that practice the ’100 patent. The Qualcomm Snapdragon 8+ Gen 1 is detailed below as a representative example.

94. As a representative example, the Qualcomm Snapdragon 8+ Gen 1, a 4nm (N4) application processor incorporated into Samsung Galaxy devices including the Galaxy Z Fold 4, embodies each element of at least claim 1 of the ’100 patent. The processor comprises a silicon substrate with a plurality of FinFET gate structures; an interlayer dielectric (ILD) layer of silicon oxide around the gate structures; and, stacked above, a first etch-stop layer (silicon nitride), a first

dielectric layer (silicon oxide), a second etch-stop layer (silicon nitride), and a second dielectric layer (silicon oxide). First contact plugs extend through the ILD, first etch-stop, and first dielectric layers to connect source/drain regions; second contact plugs in the second etch-stop and second dielectric layers connect to the first contact plugs and are wider at their base than the tops of the first contact plugs; and a third contact plug extends through the first etch-stop, first dielectric, second etch-stop, and second dielectric layers and directly contacts both a gate structure and a first contact plug—the "butted" (shared) contact recited in claim 1.

95. The annotated TEM cross-section of the Snapdragon 8+ Gen 1 below shows the dual etch-stop / multi-layer dielectric stack and the butted third contact plug—the limitation of claim 1 reciting "a plurality of third contact plugs in the first etch stop layer, the first dielectric layer, the second etch stop layer, and the second dielectric layer for electrically connecting to the gate structures, wherein the third contact plugs contact the gate structures and the first contact plugs directly":



96. The composition of the accused dielectric stack confirms infringement of the ’100 patent’s dependent claims. As shown in the annotated elemental maps below, the interlayer dielectric, the first dielectric layer, and the second dielectric layer are each silicon oxide, while the first and second etch-stop layers are each silicon nitride (claim 3: “the first etch stop layer and the second etch stop layer comprise silicon nitride”):




97. Since having notice of the ’100 patent, through its actions, Samsung has induced infringement of the ’100 patent under 35 U.S.C. § 271(b) by actively inducing its customers, distributors, retailers, resellers, product makers, partners, agents, affiliates, service providers, importers, and/or end-users to directly infringe the ’100 patent. Samsung has done so by, among other things, creating, disseminating, designing, marketing, advertising, promoting, instructing, encouraging, and providing technical support and documentation for the Accused Processors and Accused Products, with knowledge of the ’100 patent and with the specific intent that customers,

end-users, and supply chain participants will make, use, offer to sell, sell, and import the Accused Processors and Accused Products in a manner that infringes the ’100 patent. Samsung’s sales engineers, field application engineers, and technical marketing personnel interface with customers and distribution partners—including Samsung’s own device-manufacturing divisions and Samsung’s retail distribution partners—to obtain orders and to promote the use of the Accused Processors and Accused Products. These efforts have directly and intentionally resulted in acts of direct infringement by those third parties.

98. Since having notice of the ’100 patent, Samsung has contributorily infringed and continues to contributorily infringe one or more claims of the ’100 patent under 35 U.S.C. § 271(c) by importing, offering to sell and selling within the United States Accused Processors and components thereof that are especially made or especially adapted for use in infringing the ’100 patent and that are not staple articles or commodities of commerce suitable for substantial non-infringing use. The Accused Processors are specialized integrated circuits that can only function when incorporated into consumer electronic products and that have no use outside their intended applications. Samsung has known the Accused Processors to be especially adapted for practicing, and thus infringing, the ’100 patent at least as of the filing of this Complaint.

99. At least as of the filing and service of this Complaint, Samsung has had knowledge of the ’100 patent and of its infringement. Despite this knowledge, Defendants have continued their infringing acts.

100. Samsung’s direct, induced, and contributory infringement of the ’100 patent has caused, and will continue to cause, substantial damage to Stellar. Therefore, Stellar is entitled to an award of damages adequate to compensate for Defendants’ infringement, but in no event less than a reasonable royalty, together with pre- and post-judgment interest, attorneys’ fees, and costs, as fixed by the Court under 35 U.S.C. §§ 284 and 285.

**COUNT V: INFRINGEMENT OF U.S. PATENT NO. 9,899,267**

101. Stellar repeats and incorporates by reference each preceding paragraph as if fully set forth herein.

102. Samsung has directly infringed and continues to directly infringe one or more claims of the ’267 patent, in violation of 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, using, selling, offering to sell, and/or importing into the United States the Accused Processors and Accused Products, and other products made by practicing and by performing processes that result in practicing the ’267 patent as described herein. The Accused Processors and Accused Products identified in the representative reads below infringe at least claim 8 of the ’267 patent.

103. The ’267 patent generally claims a semiconductor device incorporating a three-section gate isolation structure that provides electrically isolating boundaries between adjacent gate electrodes in densely packed standard-cell logic layouts.

104. The Accused Products infringing the ’267 patent include all products identified in Exhibit 7 as infringing this patent. These include, without limitation, the Accused Products incorporating: (i) TSMC N4-fabricated Snapdragon 8+ Gen 1 processors; (ii) TSMC N4P-fabricated Snapdragon 8 Gen 2 and 8 Gen 3 processors; and (iii) TSMC N3E- and N3P-fabricated Snapdragon 8 Elite (Gen 4) and Snapdragon 8 Elite (Gen 5) processors. Each of these process nodes employs three-section gate-isolation structures as part of their standard-cell design rules and gate-patterning processes that practice the ’267 patent. The Qualcomm Snapdragon 8+ Gen 1 is detailed below as a representative example.

105. As a representative example, the Qualcomm Snapdragon 8+ Gen 1, a 4nm (N4) application processor incorporated into Samsung Galaxy devices including the Galaxy Z Fold 4, embodies each element of at least claim 8 of the ’267 patent. The processor comprises a silicon

substrate with a plurality of fin structures elongated in a first direction, a shallow-trench-isolation (STI) structure of silicon oxide between the fins, and a plurality of metal gate electrodes elongated in a second direction that straddle the fins. A gate-isolation structure is disposed between two adjacent gate electrodes, with its bottom surface lower than the top surface of the STI. As shown in the annotated TEM cross-section below, the gate-isolation structure comprises three vertically stacked sections: a first section spanning the depth of the gate; a second section, beneath the first, extending below the top surface of the STI; and a third section, beneath the second, extending below the bottom surface of the STI into the substrate—the three-section gate-isolation structure recited in claim 8.

106. The annotated TEM cross-section of the Snapdragon 8+ Gen 1 below depicts the three-section gate-isolation structure—the limitation of claim 8 reciting "a gate isolation structure … compris[ing]: a first section; a second section disposed under the first section, wherein the second section is lower than the top surface of the shallow trench isolation structure; and a third section disposed under the second section, wherein the third section is lower than a bottom surface of the shallow trench isolation structure":




107. The composition and placement of the accused gate-isolation structure further confirm infringement of at least claim 8 of the '267 patent. As shown in the annotated elemental maps below, the gate-isolation structure is a trench disposed between two adjacent gate electrodes, which is consistent with claim 8's "gate isolation structure disposed between two of the gate electrodes adjacent with one another … wherein a bottom surface of the gate isolation structure is lower than a top surface of the shallow trench isolation structure":



108. Since having notice of the ’267 patent, through its actions, Samsung has induced infringement of the ’267 patent under 35 U.S.C. § 271(b) by actively inducing its customers, distributors, retailers, resellers, product makers, partners, agents, affiliates, service providers, importers, and/or end-users to directly infringe the ’267 patent. Samsung has done so by, among other things, creating, disseminating, designing, marketing, advertising, promoting, instructing, encouraging, and providing technical support and documentation for the Accused Processors and Accused Products, with knowledge of the ’267 patent and with the specific intent that customers, end-users, and supply chain participants will make, use, offer to sell, sell, and import the Accused Processors and Accused Products in a manner that infringes the ’267 patent. Samsung’s sales engineers, field application engineers, and technical marketing personnel interface with customers and distribution partners—including Samsung’s own device-manufacturing divisions and Samsung’s retail distribution partners—to obtain orders and to promote the use of the Accused Processors and Accused Products. These efforts have directly and intentionally resulted in acts of direct infringement by those third parties.

109. Since having notice of the ’267 patent, Samsung has contributorily infringed and continues to contributorily infringe one or more claims of the ’267 patent under 35 U.S.C. § 271(c) by importing, offering to sell and selling within the United States Accused Processors and components thereof that are especially made or especially adapted for use in infringing the ’267 patent and that are not staple articles or commodities of commerce suitable for substantial non-infringing use. The Accused Processors are specialized integrated circuits that can only function when incorporated into consumer electronic products and that have no use outside their intended applications. Samsung has known the Accused Processors to be especially adapted for practicing, and thus infringing, the ’267 patent at least as of the filing of this Complaint.

110. At least as of the filing and service of this Complaint, Samsung has had knowledge of the ’267 patent and of its infringement. Despite this knowledge, Defendants have continued their infringing acts.

111. Samsung’s direct, induced, and contributory infringement of the ’267 patent has caused, and will continue to cause, substantial damage to Stellar. Therefore, Stellar is entitled to an award of damages adequate to compensate for Defendants’ infringement, but in no event less than a reasonable royalty, together with pre- and post-judgment interest, attorneys’ fees, and costs, as fixed by the Court under 35 U.S.C. §§ 284 and 285.

## COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 12,087,666

112. Stellar repeats and incorporates by reference each preceding paragraph as if fully set forth herein.

113. Samsung has directly infringed and continues to directly infringe one or more claims of the ’666 patent, in violation of 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, using, selling, offering to sell, and/or importing into the United States the Accused Processors and Accused Products, and other products made by practicing and by performing processes that result in practicing the ’666 patent as described herein. The Accused Processors and Accused Products identified in the representative reads below infringe at least the representative claims of the ’666 patent.

114. The ’666 patent generally claims a semiconductor device and layout configuration that simplifies the layout design of or reduces the area occupied by the standard cell.

115. The Accused Products infringing the ’666 patent include all products identified in Exhibit 7 as infringing this patent. These include, without limitation, products incorporating: (i) TSMC N4-fabricated Snapdragon 8+ Gen 1 processors; (ii) TSMC N4P-fabricated Snapdragon 8 Gen 2 and 8 Gen 3 processors; and (iii) TSMC N3E- and N3P-fabricated Snapdragon 8 Elite (Gen

4) and Snapdragon 8 Elite (Gen 5) processors. Each of these process nodes employs slot-contact and layout configurations in logic standard cells that practice the ’666 patent. The Qualcomm Snapdragon 8+ Gen 1 is detailed below as a representative example.

116. As a representative example, the Qualcomm Snapdragon 8+ Gen 1, a 4nm (N4) application processor incorporated into Samsung Galaxy devices including the Galaxy Z Fold 4, embodies each element of at least claim 1 of the ’666 patent.

117. In the accused standard-cell logic, the substrate includes first and second active regions elongated in a first direction with an isolation structure between them; first and second gate structures are continuously elongated in a second direction across both active regions and the isolation structure; and a first source/drain region lies in the first active region between the two gates. A first slot-contact structure (a “CT” trench) is continuously elongated in the second direction between the two gates, sits over both active regions and the isolation structure, and electrically connects the first source/drain region. A second slot-contact structure connects a second source/drain region on the opposite side of the first gate; as shown in the annotated plan-view image below, the second slot contact is shorter than the first slot contact in the second direction, and a portion of it extends over the isolation structure—the layout recited in claim 1.

118. The annotated plan-view image of the Snapdragon 8+ Gen 1 below shows the first and second slot-contact structures and the difference in their lengths—the limitation of claim 1 reciting “a second slot contact structure elongated in the second direction and at least partially disposed on the first active region … and a length of the second slot contact structure in the second direction is less than a length of the first slot contact structure in the second direction, wherein a part of the second slot contact structure is disposed above the isolation structure in a thickness direction of the substrate”:




119. The Snapdragon 8+ Gen 1 also practices the dependent claims of the ’666 patent, for example, claim 2: the first and second gate structures run in a second direction orthogonal to the fins. As shown in the annotated plan-view image below, a third source/drain region in the second active region is electrically connected to the first source/drain region through the first slot-contact structure, satisfying claim 3’s “a third source/drain region disposed in the second active region located between the first gate structure and the second gate structure, wherein the first slot contact structure is electrically connected with the third source/drain region, and the first source/drain region is electrically connected with the third source/drain region via the first slot contact structure”:




120. Since having notice of the ’666 patent, through its actions, Samsung has induced infringement of the ’666 patent under 35 U.S.C. § 271(b) by actively inducing its customers, distributors, retailers, resellers, product makers, partners, agents, affiliates, service providers, importers, and/or end-users to directly infringe the ’666 patent. Samsung has done so by, among other things, creating, disseminating, designing, marketing, advertising, promoting, instructing, encouraging, and providing technical support and documentation for the Accused Processors and Accused Products, with knowledge of the ’666 patent and with the specific intent that customers, end-users, and supply chain participants will make, use, offer to sell, sell, and import the Accused Processors and Accused Products in a manner that infringes the ’666 patent. Samsung’s sales engineers, field application engineers, and technical marketing personnel interface with customers and distribution partners—including Samsung’s own device-manufacturing divisions and Samsung’s retail distribution partners—to obtain orders and to promote the use of the Accused Processors and Accused Products. These efforts have directly and intentionally resulted in acts of direct infringement by those third parties.

121. Since having notice of the ’666 patent, Samsung has contributorily infringed and continues to contributorily infringe one or more claims of the ’666 patent under 35 U.S.C. § 271(c) by importing, offering to sell and selling within the United States Accused Processors and components thereof that are especially made or especially adapted for use in infringing the ’666 patent and that are not staple articles or commodities of commerce suitable for substantial non-infringing use. The Accused Processors are specialized integrated circuits that can only function when incorporated into consumer electronic products and that have no use outside their intended applications. Samsung has known the Accused Processors to be especially adapted for practicing, and thus infringing, the ’666 patent at least as of the filing of this Complaint.

122. At least as of the filing and service of this Complaint, Samsung has had knowledge of the ’666 patent and of its infringement. Despite this knowledge, Defendants have continued their infringing acts.

123. Samsung’s direct, induced, and contributory infringement of the ’666 patent has caused, and will continue to cause, substantial damage to Stellar. Therefore, Stellar is entitled to an award of damages adequate to compensate for Defendants’ infringement, but in no event less than a reasonable royalty, together with pre- and post-judgment interest, attorneys’ fees, and costs, as fixed by the Court under 35 U.S.C. §§ 284 and 285.

## COUNT VII: WILLFUL INFRINGEMENT OF THE ASSERTED PATENTS

124. Stellar incorporates by reference each of the preceding paragraphs as if fully set forth herein.

125. At least as of the filing and service of this Complaint, Samsung has had actual knowledge of each of the Asserted Patents and of its infringement of those patents.

126. Despite this knowledge, Samsung has continued to make, use, import, offer to sell, and sell the Accused Processors and Accused Products in the United States, including in this District,

without a license from Stellar and without lawful right, in conscious disregard of Stellar's patent rights.

127. Defendants' continued infringement after receiving notice of the Asserted Patents and this lawsuit is willful and deliberate and constitutes egregious misconduct warranting enhanced damages under 35 U.S.C. § 284.

128. Stellar reserves the right to assert and prove that Samsung had pre-suit knowledge of one or more of the Asserted Patents and of its infringement of those patents, including based on Defendants' participation in relevant semiconductor industry standards bodies and consortia, prior licensing communications with Stellar or its predecessors in interest, patent prosecution of patents in the same or similar technology space, and Defendants' own analysis and reverse-engineering of semiconductor devices incorporating the patented technology.

129. As a direct and proximate result of Defendants' willful infringement of the Asserted Patents, Stellar has suffered and continues to suffer damages, including at least a reasonable royalty for Defendants' past and ongoing infringement, and is entitled to recover damages adequate to compensate it for such infringement, together with pre-judgment and post-judgment interest and costs, under 35 U.S.C. § 284, as well as enhanced damages under 35 U.S.C. § 284 for Defendants' willful infringement.

## PRAYER FOR RELIEF

WHEREFORE, Stellar respectfully requests that this Court enter judgment in its favor and against Defendants and grant the following relief:

a) A judgment that each Defendant has directly infringed, induced infringement of, and contributorily infringed one or more valid and enforceable claims of each of the Asserted Patents;

b) A judgment that Defendants' infringement has been willful and that this case is exceptional within the meaning of 35 U.S.C. § 285;

c) An award of damages adequate to compensate Stellar for Defendants' past and ongoing infringement of the Asserted Patents, in no event less than a reasonable royalty, together with pre-judgment and post-judgment interest and costs, as provided by 35 U.S.C. § 284;

d) An award of enhanced damages for willful infringement under 35 U.S.C. § 284, up to three times the amount of compensatory damages;

e) A permanent injunction enjoining Defendants and their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them from further acts of infringement of the Asserted Patents; or, in the alternative, an ongoing royalty for any continued infringement following entry of judgment;

f) An order requiring Defendants to pay supplemental damages, including ongoing royalties and interest, with an accounting as needed;

g) An award of Stellar's reasonable attorneys' fees under 35 U.S.C. § 285, if available, and as otherwise permitted by law;

h) An award of Stellar's costs and expenses; and

i) Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and Local Rule CV-38 of the Eastern District of Texas, Plaintiff Stellar Semiconductor Technologies, LLC hereby demands a trial by jury on all issues so triable.

Dated: August 7, 2026

Respectfully submitted,

*/s/ Meng Xi*

Meng Xi – Lead Counsel
Texas State Bar No. 24132850
MXi@susmangodfrey.com
Joe Grinstein
Texas State Bar No. 24002188
JGrinstein@susmangodfrey.com
Ace M. Factor
Texas State Bar No. 24118923
AFactor@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096

Telephone: (713) 653-7807
Facsimile: (713) 654-6666

Andrea L. Fair
Texas State Bar No. 24078488
andrea@millerfairhenry.com
MILLER FAIR HENRY, PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

*Attorneys for Plaintiff Stellar Semiconductor Technologies, LLC*